## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PULLEN SEEDS AND SOIL, on behalf of itself, and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>MONSANTO COMPANY, )<br><br>Defendant. ) | C.A. No. 06-599 (SLR) |

PULLEN SEEDS AND SOIL, on behalf
of itself, and all others similarly situated,

        Plaintiff,

        v.

MONSANTO COMPANY,

        Defendant.

C.A. No. 06-599 (SLR)

WADE FARMS, WHITTINGTON &
SUMNER FARMS, CLIFFORD F.
DANCE, D/B/A CLIFFORD DANCE
FARMS, and all others similarly
situated,

        Plaintiffs,

        v.

MONSANTO COMPANY,

        Defendant.

C.A. No. 06-600 (SLR)

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION OF DEFENDANT
## MONSANTO COMPANY'S MOTIONS TO DISMISS

Jeffrey S. Goddess (Del. Bar No. 630)
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE  19899
(302) 656-4433
jgoddess@rmgglaw.com

December 20, 2006

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................... 1

SUMMARY OF ARGUMENT .................................................... 1

STATEMENT OF FACTS .................................................... 3

ARGUMENT ............................................................. 8

I.      The Forum Selection Clause is Not Applicable to Plaintiffs' Antitrust Claims . . 8

        A.      The Forum Selection Clause Does Not Apply To Plaintiffs' Antitrust
                Claims Concerning Their Purchases of Herbicide ................... 8

        B.      The Forum Selection Clause Is Inapplicable Because It Does Not
                Encompass All of Plaintiffs' Claims ........................... 13

II.     The Forum Selection Clause is Not Enforceable Against Plaintiffs' Claims ... 15

        A.      Enforcement of the Forum Selection Clause With Respect to Plaintiffs'
                Herbicide Claims Would Contravene Strong Public Policy .......... 15

        B.      The Interests Of Judicial Economy Do Not Favor Transfer ......... 18

CONCLUSION ........................................................... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

PAGE:

*Alexander v. Anthony Int'l, L.P.,*
    341 F.3d 256 (3d Cir. 2003) ................................................................... 17, 18

*American Seed Co. v. Monsanto Co.,*
    2006 U.S. Dist. LEXIS 82541 (D. Del. Nov. 13, 2006) ............................................ 8, 19

*Armco, Inc. v. N. Atlantic Insurance Co.,*
    68 F. Supp. 2d 330 (S.D.N.Y. 1999) .............................................................. 14

*Campbell Soup Co. v. Wentz,*
    172 F.2d 80 (3rd Cir. 1948) ...................................................................... 18

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,*
    709 F.2d 190 (3d Cir.), cert. denied, 464 U.S. 938 (1983) ............................................ 13

*Cottman Transmission Systems, Inc. v. Martino,*
    36 F.3d 291 (3d Cir. 1994) ...................................................................... 13

*Dardovitch v. Haltzman,*
    190 F.3d 125 (3d Cir. 1999) ..................................................................... 12

*Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.,*
    806 F.2d 848 (8th Cir. 1986) ................................................................... 14

*Gaines v. Carrolton Tobacco Board of Trade, Inc.,*
    386 F.2d 757 (6th Cir. 1967) ................................................................... 17

*Imation Corp. v. Quantum Corp.,*
    2002 U.S. Dist. LEXIS 4034 (D. Minn. March 8, 2002) ................................................. 8

*Intel Corp. v. VIA Technologies, Inc.,*
    319 F.3d 1357 (Fed.Cir. 2003) ............................................................... 9, 12

*John Wyeth & Brother Ltd. v. Cigna International Corp.,*
    119 F.3d 1070 (3d Cir. 1997) ..................................................................... 9

*Kahn v. Am. Heritage Life Ins. Co.,*
    2006 U.S. Dist. LEXIS 45749 (E.D. Pa. June 29, 2006) ............................................... 15

*Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgeselischaft,*
    699 F. Supp. 669 (N.D. Ill. 1988) ................................................................ 12

*Lambert v. Kysar,*
    983 F.2d 1110 (1st Cir. 1993) .................................................................... 13

*Lauro Lines S.R.L. v. Chasser,*
    490 U.S. 495 (1989) .................................................................................. 14

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*
    858 F.2d 509 (9th Cir. 1988) .................................................................... 13

*Massey v. Monsanto,*
    2000 U.S. Dist. LEXIS 11305 (N.D. Miss. June 13, 2000) ........................... 12

*McNair v. Monsanto Co.,*
    279 F. Supp. 2d 1290 (M.D. Ga. 2003) ...................................................... 12

*Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985) .................................................................................. 17

*Monsanto Co. v. Dawson,*
    2000 U.S. Dist. LEXIS 22391 (E.D. Mo. Aug. 18, 2000) ........................... 12

*Monsanto Co. v. Godfredson,*
    2000 U.S. Dist. LEXIS 22383 (E.D. Mo. April 13, 2000) ........................... 12

*Monsanto Co. v. McFarling,*
    302 F.3d 1291 (Fed. Cir. 2002) ........................................................... 12, 18

*Monsanto Co. v. Nelson,*
    2001 U.S. Dist. LEXIS 25132 (E.D. Mo. Sept. 10, 2001) ........................... 12

*Monsanto Co. v. White,*
    2001 U.S. Dist. LEXIS 25135 (E.D. Mo. June 22, 2001) ............................ 12

*New Moon Shipping Co. v. Man B & W Diesel AG,*
    121 F.3d 24 (2d Cir. 1997) ......................................................................... 9

*O'Brien v. Miller,*
    168 U.S. 287 (1897) .................................................................................. 16

*Ostroff v. Altera Healthcare Corp.,*
    433 F. Supp. 2d 538 (E.D. Pa. 2006) (same) ............................................. 18

iii

*Roby v. Corp. of Lloyd's,*
    996 F.2d 1353 (2d Cir. 1993) ........................................................................... 13

*Smith v. Lucent Techs., Inc.,*
    2004 U.S. Dist. LEXIS 4074 (E.D. La. March 15, 2004) ........................................... 8, 14

*Steward v. Up North Plastics, Inc.,*
    177 F. Supp. 2d 953 (D. Minn. 2001) ............................................................... 18

*Telcordia Tech, Inc. v. Telkom SA, Ltd.,*
    458 F.3d 172 (3d Cir. 2006) ........................................................................... 12

*Terra Int'l, Inc. v. Mississippi Chemical Corp.,*
    119 F.3d 688 (8th Cir. 1997) ......................................................................... 8, 13

*The Bremen v. Zapata Off-Shore Co.,*
    407 U.S. 1 (1972) ....................................................................................... 15

*The Jayson Co. v. Vertical Mkt. Software & Vertical Software Servs.,*
    2006 U.S. Dist. LEXIS 30638 (D.N.J. May 18, 2006) .................................................... 13

## STATE CASES

*Radio Corp. of America v. Philadelphia Storage Battery Co.,*
    6 A.2d 329 (Sup. Ct. Del. 1939) ...................................................................... 16

## DOCKETED CASES

*American Seed Co. v. Monsanto Co.,*
    C.A. 05-535-SLR ......................................................................................... 3,18

*Blades v. Monsanto Co.,*
    No. 00-CV-4034 (S.D. Ill. Jan. 3, 2001) ................................................................ 12, 18

*Syngenta Seeds, Inc. v. Monsanto Co.,*
    C.A.. No. 04-908-SLR ................................................................................... 3,19

## FEDERAL STATUTES

15 U.S.C. § 26 .................................................................................................... 7

28 U.S.C. 1404(a) .............................................................................................. 18

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1

Sections 1 & 2 of the Sherman Act, 15 U.S.C.§§ 1& 2 .............................................. 7

## STATE STATUTES

Iowa, Iowa Code 553.1 *et seq* ............................................................................. 7

Plaintiffs Pullen Seeds and Soil, Wade Farms, Whittington & Sumner Farms and Clifford F. Dance, d/b/a Clifford Dance Farms (collectively "Plaintiffs") submit this answering brief in opposition to defendant Monsanto Company's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## NATURE AND STAGE OF THE PROCEEDINGS

In these antitrust complaints, Plaintiffs seek to recover overcharges they paid on purchases of Roundup, an herbicide manufactured by Monsanto. In its Rule 12(b)(6) motion to dismiss, Monsanto does not challenge the legal sufficiency of any of the claims asserted under federal and state antitrust law nor the convenience of the forum.[2] Instead, it argues that the actions should be dismissed because of a "forum-selection clause" in Monsanto's "Technology Agreements" that farmers are required to sign as a condition of buying an entirely different product – seeds with Monsanto genetically modified seed traits. Significantly, Plaintiffs' herbicide purchases – which is what Plaintiffs' claims are all about -- were not made pursuant to any agreement at all.

## SUMMARY OF ARGUMENT

1.      Monsanto's argument fails at the outset because Plaintiffs' antitrust claims seek relief regarding their purchase of *herbicides* and *not any seed product* covered by the Technology Agreement. The Technology Agreement on its face does not apply to Plaintiffs' herbicide claims. Applying the forum selection clause to Plaintiffs' antitrust claims as Monsanto suggests would, as

---

[1] Defendant's motion addresses both complaints (C.A. No. 66-599-SLR and C.A. No. 06-600-SLR) in a single memorandum and Plaintiffs similarly submit a combined response.

[2] Monsanto maintains that it can raise these 12(b)(6) issues later (Def. Mem. at 2 n.1). Whether or not it can do so, for some reason Monsanto would prefer to litigate these legal issues in another forum.

discussed below, render the Technology Agreement and the clause unconscionable and unenforceable. Defendant's invocation of the forum selection clause is nothing more than a strategic *post hoc* attempt to deny Plaintiffs their forum of choice.

2.      The forum selection clause in the Technology Agreement does not apply because Plaintiffs' monopolization claims are based on a scheme that is far broader than any dispute relating to the Technology Agreement. Monsanto cannot isolate one component part of its anticompetitive scheme in an attempt to transform an antitrust case about herbicides into a dispute about seeds.

3.      If Monsanto were correct that the Technology Agreement governs Plaintiffs' claims (which it does not), then application of the forum selection clause would be unconscionable and contrary to pubic policy. The Technology Agreement expressly limits Monsanto's legal liability to losses resulting from the use or handling of seeds and the grower's remedy to the price paid for seed. Thus, if one were to accept Defendant's illogical argument that the Technology Agreement applies to the purchase of non-seed products (such as herbicides), then the agreement by its very terms precludes any liability or remedy for claims regarding non-seed products.

Moreover, Monsanto's attempt to extend the reach of the forum selection clause to control transactions *which were never the subject of an agreement between the parties* is itself unconscionable since Monsanto is exploiting its domination over growers in the seed market to deny them their forum of choice in which to litigate antitrust claims in the herbicide market. Monsanto can't have it both ways: if the Technology Agreement applies to Plaintiffs' herbicide purchases, then the agreement (and its forum selection clause) is unenforceable and unconscionable since it denies Plaintiffs a remedy for Monsanto's violation of federal and state antitrust law.

2

4.    Lastly, dismissal or transfer of this case to Missouri would not promote judicial economy as Defendant asserts, but only result in waste of judicial resources and efficiency since the factual underpinnings of Plaintiffs' claims are currently being litigated in this Court and have already been subject of considerable discovery.[3]

## STATEMENT OF FACTS

Monsanto manufactures Roundup, a non-selective herbicide used in conjunction with seeds that have been genetically modified to be resistant to glyphosate, the active ingredient in Roundup. In their complaints, plaintiff growers in the states of Iowa and Mississippi allege that they have been overcharged for their purchases of Roundup – *even after Monsanto's glyphosate patent expired in September 2000* – as a result of Monsanto's broad, multifaceted anticompetitive scheme to unlawfully acquire and maintain its monopoly in the market for glyphosate herbicides. While prices for Roundup should have fallen dramatically once the glyphosate patent expired, Monsanto was able to suppress and delay generic competition as a result of its comprehensive exclusionary scheme, involving multiple markets and implemented at all levels of manufacture and distribution, that denied actual and potential generic herbicide competitors access to the market. As detailed in the complaints and as summarized below, Monsanto has maintained a dominant market share of all glyphosate herbicides sold in the United States through an exclusionary strategy that has enabled Monsanto to leverage its monopolies in the market for glyphosate herbicides and various genetically modified seed traits and permitted it to charge monopoly prices well in excess of the competitive price it would have been forced to charge absent its anticompetitive conduct.

---

[3] *Syngenta Seeds, Inc. v. Monsanto*, C.A. No. 04-908-SLR; *American Seed v. Monsanto*, C.A. No. 05-535-SLR.

3

As detailed in the complaints, since 1974 Monsanto has manufactured and sold a herbicide called "Roundup." Because Roundup is a non-selective herbicide which kills a wide variety of vegetation without distinguishing between valuable crops and unwanted weeds, its initial uses and sales were limited. (Pullen Seeds Compl. ¶ 4; Wade Farms Compl. ¶ 4).

In the 1990's Monsanto developed various genetically modified crop seeds traits that were tolerant to glyphosate herbicides, permitting Roundup to be applied post-emergence or "over the top" of the crops without destroying the plants. Monsanto commercially introduced glyphosate tolerant cotton seeds in 1997 and glyphosate tolerant corn seeds in 1998 which were marketed under the name "Roundup Ready." (Pullen Seeds Compl. ¶ 55; Wade Farms Compl. ¶ 57).

Since the introduction of Roundup Ready cotton seeds, the number of acres planted with Monsanto's Roundup Ready seed traits has grown dramatically. By 1999, Roundup Ready cotton seeds accounted for nearly six million of the 14.6 million acres of cotton grown in the United States in that year; by 2000, Roundup Ready cotton seeds comprised approximately 50% of all the cotton seeds grown in the United States and as of 2005 Monsanto's genetically modified cotton seed constituted 90% of all the cotton seeds sold in the United States market. As of 2005, Roundup Ready soybeans seeds constituted 80% of all soybean seeds grown in the United States, and Roundup Ready corn seeds constituted 45% of the corn seeds bought in the United States. (Pullen Seeds Compl. ¶ 57; Wade Farms Compl. ¶ 59).

Within a few years after Monsanto introduced genetically modified seeds, Roundup accounted for approximately 80% of all agricultural herbicide sold in the United States, as other types of herbicides were forced out of the market and competing herbicide manufacturers discontinued sales of their competing products. (Pullen Seeds Compl. ¶ 5; Wade Farms Compl. ¶ 5).

4

Other seed producers were, of course, capable of producing genetic traits that enabled crops to tolerate other types of herbicides not manufactured by Monsanto – such as glufosinate tolerant seed traits – and innovations of this kind threatened to take market share away from both Monsanto's seeds and herbicide sales.

To prevent other manufacturers from making inroads into Roundup's market, Defendant blocked the development of competing seeds which could be used with non-glyphosate herbicides. (Pullen Seeds Compl.¶¶ 6, 58; Wade Farms Compl. ¶¶ 6, 60). It did so by, among other things: (a) acquiring seed companies such as DeKalb, Asgrow, Holdens Foundation Seed, Argocetes, Ecogen, Calgene and Plant Breeding International that were developing genetically modified seed technology; (b) terminating those projects that could have led to the development of genetically modified seeds that could be used with non-glyphosate herbicides; and (c) entering into exclusive-dealing licenses with seed companies, dealers and chemical companies that denied actual and potential rivals access to critical developmental, marketing, supply and distribution channels. (Pullen Seeds Compl. ¶¶ 59–63; Wade Farms Compl. ¶¶ 61-65 ).

Monsanto's agreements with seed companies from the late 1990s not only blocked the development of seeds that could be used with competing, non-glyphosate herbicides, but also expressly required that any seed company that wished to license Monsanto's patented technology was also required to: (a) use only brand-name Roundup, (b) promote only brand-name Roundup (as opposed to generic glyphosate) and (c) conceal the fact that other competing herbicides could be used with Monsanto's seed traits. Thus, even before its Roundup patent expired in late 2000, Monsanto was already using various types of agreements (other than the Tech Agreements at issue

in this motion) to lay the foundation for its scheme to impair and impede competition from less-expensive, generic glyphosate and/or other competing herbicides.

In September 2000, Monsanto's patent for Roundup expired. During the post-patent period, however, Roundup has maintained a dominant market share of all the glyphosate herbicides sold in the United States, despite the fact that Monsanto charges 300-400% more for brand-name Roundup than the price charged by its generic competitors. Defendant has achieved this feat by continuing to implement and expand its exclusionary and anti-competitive strategy.    (Pullen Seeds Compl. ¶ 4; Wade Farms Compl. ¶ 4).

Defendant has maintained its glyphosate herbicide monopoly despite the expiration of its glyphosate patent by employing various exclusionary practices which include: (a) penalizing and punishing dealers and wholesalers who sell or try to sell more than a limited amount of generic Roundup; and (b) coercing/inducing growers to buy Roundup virtually exclusively even though cheaper generic herbicides were available. (Pullen Seeds Compl. ¶ 8; Wade Farms Compl. ¶ 8). Monsanto's dealers and distributors were (and are) subjected to a variety of restrictive conditions that penalized them for selling competing glyphosate herbicide products.  For example, Monsanto imposes minimum percentage sales requirements that typically require a dealer's Roundup sales to constitute 80% or more of the dealer's total glyphosate herbicide sales, under pain of forfeiting most or all of the Monsanto rebates otherwise payable on all of the dealer's Roundup and seed sales. (Pullen Seeds Compl. ¶ 83; Wade Farms Compl. ¶ 85 ).  To the extent that growers could purchase generic glyphosate herbicides, they in turn, are coerced into using Roundup, in order to be eligible for Monsanto's crop protection program pursuant to which Monsanto agreed to waive the cost for replacement seeds if the crop fails. (Pullen Seeds Compl. ¶¶ 88-90; Wade Farms Compl. ¶¶ 90-92).

In sum, Monsanto's scheme involves multiple acts extending back to the late 1990's, the vast majority of which have nothing to do with Monsanto's Technology Agreements with growers. These exclusionary acts involve, among other things:

> (a) the acquisition of numerous seed companies in the late 1990's that enabled Monsanto to prevent the development of genetic seeds that could be used with other types of herbicides;

> (b) the requirement that seed company licensees agree to use and promote only Roundup, and conceal from growers that non-Monsanto herbicides could be used with certain seeds; and

> (c) the imposition of punitive bundled rebate and fee programs at the distributor and dealer level which punish dealers/dealers for buying/selling more than a *de minimis* amount of non-Roundup herbicides.

(Pullen Seeds Compl. ¶¶ 58-63, 68-74, 82-85; Wade Farms Compl. ¶¶ 60-65, 70-76, 84-87 )

As set forth above, the effect of these unlawful agreements and monopolistic conduct has been to foreclose competition in the glyphosate herbicide market and to force Plaintiffs and other members of the classes to purchase Monsanto's brand name Roundup products when cheaper generic versions of Roundup were and/or would otherwise have been available. Accordingly, Plaintiffs have brought these action, seeking declaratory and injunctive relief under 15 U.S.C. § 26 for Monsanto's violation of Sections 1 & 2 of the Sherman Act, 15 U.S.C. §§ 1& 2, and damages under the laws of Iowa, Iowa Code §§ 553.1 *et seq.,* and Mississippi, Miss. Code §§ 75-21-1 *et seq.* for the overcharges Plaintiffs and members of the classes have paid for Roundup.  (Pullen Seeds Compl. ¶ 10; Wade Farms Compl. ¶ 12)[4]

---

[4]  Monsanto boldly asserts in its memorandum that there is a "clear conflict" between the class claims of all Roundup purchasers (direct and/or indirect) who seek injunctive relief under federal antitrust law and those indirect purchasers who seek to recover damages and/or penalties under the antitrust laws of Iowa and Mississippi but fail to articulate where the conflict lies.  There is no conflict nor has this issue properly been raised before the Court requiring further discussion.

*Significantly*, while certain of the factual underpinnings of Plaintiffs' lawsuits involve the same conduct challenged in the *American Seed* case – especially with respect to Monsanto's monopolization of the seed trait market – Plaintiffs' overcharge claims here are addressed to the glyphosate herbicide market and therefore do not present the individualized issues in the *American Seed* case that led the Court to deny class certification. *American Seed Co. v. Monsanto Co.*, 2006 U.S. Dist. LEXIS 82541 (D. Del. Nov. 13, 2006). The market for glyphosate herbicides is far more homogenous and uniform than the complex and multi-variety market for genetically modified corn seed. As Plaintiffs intend to demonstrate on their motion for class certification, the issues concerning liability, antitrust impact and damages with respect to their herbicide claims will be established by predominantly common proof.

## ARGUMENT

**I.    The Forum Selection Clause is Not Applicable to Plaintiffs' Antitrust Claims**

> **A.    The Forum Selection Clause Does Not Apply To Plaintiffs' Antitrust Claims Concerning Their Purchases of Herbicide**

Before considering whether to enforce a forum selection clause, a court should first determine whether the clause is applicable to the claims asserted in the lawsuit. *Smith v. Lucent Techs., Inc.*, 2004 U.S. Dist. LEXIS 4074, *25 (E.D. La. March 15, 2004). *See also Imation Corp. v. Quantum Corp.*, 2002 U.S. Dist. LEXIS 4034, *10 (D. Minn. March 8, 2002) (*quoting Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997)). Indeed, as this Court noted while denying Monsanto's motion to transfer in *American Seed* because the forum selection clause at issue was permissive, "[o]f course there is the further question of whether American Seed's antitrust

claims 'relate' to a Monsanto agreement." *American Seed*, C.A. No. 05-535-SLR (Dec. 5, 2005 Order), at 5 n.1; Exhibit G to Defendant Monsanto's Opening Memorandum.

Whether the forum selection clause applies to the dispute depends on the language of the clause at issue. *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F. 3d 1070, 1073-74 (3rd Cir. 1997). The court must "first look to the text of the contract to determine whether it unambiguously states the parties' intentions. . . . To be 'unambiguous,' a contract clause must be *reasonably capable of only one construction.*" *Id.* at 1074 (citation omitted) (emphasis supplied). Any ambiguity in the language of a contract is to be interpreted against the drafter. *See Intel Corp. v. VIA Technologies, Inc.*, 319 F. 3d 1357, 1363 (Fed.Cir. 2003) (under Delaware law, when a contract is ambiguous, it is to be construed against the drafter). Furthermore, on a motion to dismiss, the "party seeking to avoid enforcement of [a forum selection clause is] also entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard." *New Moon Shipping Co. v. Man B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997).

Here, Plaintiffs' claims are for the overcharges they paid for *herbicides* – not seeds. The Technology Agreement's forum selection clause addresses claims and disputes concerning the purchase and use of *seeds* – not herbicides. In their lawsuits Plaintiffs do not assert any claim for relief, contractual or otherwise, concerning their purchases of seed covered by the Technology Agreements. To the extent the complaints contain allegations regarding the anticompetitive effect of the Technology Agreements, those allegations constitute only one aspect of Monsanto's overarching scheme to unlawfully monopolize the herbicide market and do not transform (or reduce) an antitrust lawsuit about herbicides into a dispute about seeds that are subject to a forum selection clause.

9

A reading of the of the forum selection clause, as well as other provisions in the Technology

Agreements, demonstrates that the clause and the agreement address claims and disputes concerning

*seeds*. The forum selection clause for the years 2003 through 2006 states in relevant part:

**FORUM SELECTION CLAUSE FOR NON-COTTON-RELATED CLAIMS
MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT
TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S.
DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN
DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS,
MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL
CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY
WITH THIS AGREEMENT AND THE USE OF THE SEED OR THE MONSANTO
TECHNOLOGIES[5] EXCEPT FOR COTTON-RELATED CLAIMS MADE BY THE
GROWER.

Def. Mem. Ex. B at 1. A plain reading of Defendant's chosen text requires that the claim or dispute

at issue must involve the Technology Agreement ***and*** the use of the *seed* or *seed technology* to fall

within the ambit of the clause. Here, however, Plaintiffs' claims involve their purchases of the

herbicide Roundup and not their use of seed.

Other terms in the Technology Agreement confirm that the agreement and the forum selection

clause apply only to disputes concerning seeds. The Technology Agreements contain a clause entitled

"GROWER'S EXCLUSIVE LIMITED REMEDY" which provides:

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT
OF LIABILITY OF MONSANTO OR ANY SELLER FOR ANY
AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM
THE USE OR HANDLING OF SEED CONTAINING MONSANTO
TECHNOLOGY (INCLUDING CLAIMS BASED IN CONTRACT,
NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY,
TORT OR OTHERWISE) SHALL BE THE PRICE PAID BY THE
GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR,
AT THE ELECTION OF MONSANTO OR THE SEED SELLER,

---

[5] "Monsanto Technologies" is defined elsewhere in these agreements as "Seed." Def. Mem.
Ex. B at 1.

> THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL
> MONSANTO OR ANY SELLER BE LIABLE FOR ANY
> INCIDENTAL, CONSEQUENTIAL OR SPECIAL OR PUNITIVE
> DAMAGES

Def. Mem. Ex. B at 2. It is readily apparent therefore that the Technology Agreement and its forum

selection clause cannot apply to antitrust claims concerning herbicides when Monsanto's entire

liability under the agreement is limited to "losses, injury or damages resulting from the use or

handling of seed" (capitalization removed) and the grower's exclusive remedy is the price paid for

the seed.

Moreover, the forum selection clause itself contains an explicit exception for "COTTON

RELATED CLAIMS MADE BY THE GROWER," which another clause provides are subject to

binding arbitration. Plaintiffs do not believe that even Monsanto would seriously argue that any

disputes concerning the price paid for Roundup used in conjunction with growing cotton are subject

to the Technology Agreement and must be resolved by arbitration. The Mississippi plaintiffs are

cotton growers (Wade Farms ¶¶ 16-18) and consequently the forum selection clause by its very terms

does not apply to their claims. Accepting Monsanto's interpretation of the forum selection clause

would lead to the untenable situation whereby the Mississippi plaintiffs' claims regarding the

overcharges they paid for Roundup used in connection with cotton would not be subject to the forum

selection clause *and not transferrable* whereas their purchases of Roundup used with other Monsanto

seed traits would. Needless to say, it would be a colossal waste of judicial resources, as well as those

of the parties', to split the litigation of Plaintiffs' claims between two jurisdictions.

While Plaintiffs believe it is clear and unambiguous that the forum selection clause does not

apply to their claims, it also is well settled that any ambiguity in the language of the clause is to be

11

interpreted against the drafter. *See Intel Corp.*, 319 F. 3d at 1363; *Dardovitch v. Haltzman*, 190 F.3d

125, 141 (3ᵈ Cir. 1999). In the absence of a valid and applicable forum selection clause, Plaintiffs'

choice of forum must be honored. *Telcordia Tech, Inc. v. Telkom SA, Ltd.*, 458 F. 3d 172, 180 (3ᵈ

Cir. 2006).

The cases cited by Monsanto are inapposite because they are primarily breach of contract

actions, often brought by Monsanto in St. Louis regarding breaches of the Technology Agreements

by growers, most often for growing Defendant's seeds outside of the growing season for which they

were acquired and sold, or dealing with allegations regarding the merchantability of or defects within

Defendant's seeds. Further, the majority were brought by Monsanto and, as plaintiff, its choice of

forum was entitled to preference.[6] Regarding *Blades v. Monsanto*, No. 00-CV-4034 (S.D. Ill. Jan. 3,

2001) (unpublished), and *Massey v. Monsanto*, 2000 U.S. Dist. LEXIS 11305 (N.D. Miss. June 13,

2000) (complaint by farmer alleging breach of implied warranty of merchantability, implied duty of

---

[6] *See also McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290 (M.D. Ga. 2003) (cotton farmer brought breach of contract and tort action against defendant Monsanto, alleging that gene technology in cotton seed was bad); *Monsanto Co. v. McFarling*, 302 F. 3d 1291 (Fed. Cir. 2002) (breach of contract and patent infringement action where defendant grower saved soybeans from his harvest of Roundup Ready plants and used them to plant a crop the following season without payment of a license fee to Plaintiff Monsanto); *Monsanto Co. v. Nelson*, 2001 U.S. Dist. LEXIS 25132 (E.D. Mo. Sept. 10, 2001) (patent infringement action where defendant grower "used Roundup Ready soybean seed that had been saved from" the prior growing season); *Monsanto Co. v. White*, 2001 U.S. Dist. LEXIS 25135 (E.D. Mo. June 22, 2001) (suit for breach of contract and patent infringement where defendant grower "planted unlicenced, saved Roundup Ready seed without authorization); *Monsanto Co. v. Godfredson*, 2000 U.S. Dist. LEXIS 22383 (E.D. Mo. April 13, 2000) (same); *Monsanto Co. v. Dawson*, 2000 U.S. Dist. LEXIS 22391 (E.D. Mo. Aug. 18, 2000) (same); *but see Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgeselischaft*, 699 F. Supp. 669, 670 (N.D. Ill. 1988) (denying motion to dismiss for improper venue in Sherman Act case where forum selection clause covered "any and all disputes which may arise from this contract," but the case was "void of any breach of contract action" and the court was concerned about a foreign court's ability to adjudicate an antitrust claim).

good faith and fair dealing, RICO, negligence, fraud and Sherman Act claims), the gravamen of both of these cases was Monsanto's sale of seeds and not, as here, Roundup.

Accordingly, Plaintiffs herbicide claims are not subject to the forum selection clause in the Technology Agreement.

### B.    The Forum Selection Clause Is Inapplicable Because It Does Not Encompass All of Plaintiffs' Claims

The consideration of whether to enforce a forum selection clause only applies if the dispute falls within the scope of the clause, *The Jayson Co. v. Vertical Mkt. Software & Vertical Software Servs.*, 2006 U.S. Dist. LEXIS 30638, *6 (D.N.J. May 18, 2006) (citing *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 293 (3d Cir. 1994)). Whether claims "are to be governed by the forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." *Terra Int'l*, 119 F.3d at 693 (internal quotations omitted). To determine the scope of a forum selection clause, the Third Circuit has adopted a test looking at whether the alleged claims "ultimately depend on the existence of [the contract]" between the parties. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983).[7]

Where as here, the plaintiff's claims extend beyond or are not dependent on the contractual relationship between the parties encompassed by the clause, courts have refused to apply a forum

---

[7] The Ninth Circuit considers "whether resolution of the claims relates to the interpretation of the contract," *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). The First Circuit considers whether the disputed claim is based on "the same operative facts as a parallel claim for breach of contract." *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993). This approach is followed by the Second Circuit in *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (noting that "[i]f the substance of [the plaintiff's claims], stripped of their labels does not fall within the scope of the clause[], the clause[] cannot apply."

13

selection clause notwithstanding broad language in the clause. For example, in *Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 851-52 (8th Cir. 1986), abrogated on other grounds by *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989), the Eighth Circuit declined to apply a broad forum selection clause that covered any claim "arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement," *Id.* at 849, because the plaintiff's fraud claims were broader than the clause. *Id.* at 852. Similarly in *Armco, Inc. v. N. Atlantic Ins. Co.*, 68 F. Supp. 2d 330, 338 (S.D.N.Y. 1999), the district court held that despite the broad language of the forum selection clause which required that "any dispute which may arise out of or in connection with this Agreement" be litigated in English courts, the clause did not apply because the plaintiffs' claims were broader than the clause and alleged the existence of a large scale scheme to defraud that included numerous pre-contract activities by defendants. Additionally, the court observed that plaintiffs did not seek redress for benefits guaranteed to them by the agreement in question. *Id.* at 339-40. *See also Lucent*, 2004 U.S. Dist. LEXIS 4074, at *49 -57 (applying *Armco* and *Farmland* to hold that the plaintiff's claims were outside the scope of the forum selection clause).

Here, Plaintiffs' allegations of Monsanto's far-reaching scheme to unlawfully monopolize multiple markets are much broader than any contractual relationship between growers and Monsanto embodied in the Technology Agreement and the forum selection clause does not apply. These cases are about Defendant's efforts to monopolize the market for agricultural herbicides. Defendant's Technology Agreement is simply a component part in a multi-faceted scheme. The vast majority of the allegations involve Defendant's conduct unrelated in any way to its grower relationships. Plaintiffs have alleged that Defendant blocked the development of seeds which could be used with competing herbicides, such as glufosinate-tolerant traits. (Pullen Seeds Compl. ¶¶ 6, 58.; Wade

14

Farms Compl. ¶¶ 6, 60 ). Plaintiffs have also alleged that Defendant has limited dealers' ability to sell competing glyphosate herbicide products by threatening to withhold, and withholding, rebates on Roundup sales. (Pullen Seeds Compl. ¶ 83; Wade Farms Compl. ¶ 85). Significantly, nowhere in the Complaints have Plaintiffs sought to bring a claim for breach of contract with Defendant. Defendant cannot be permitted to isolate a component part of Monsanto's overarching multi-faceted scheme and use it as a lever to transform an antitrust case about herbicides into a dispute about seeds so Monsanto can manipulate this case into the forum of its choosing. That would truly be the tail wagging the dog.

## II.     The Forum Selection Clause is Not Enforceable Against Plaintiffs' Claims

Even were the forum selection clause otherwise applicable to Plaintiffs' claims, it would not be enforceable. Forum selection clauses will not be enforced if they are unreasonable under the circumstances. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A forum selection clause is unreasonable if "(1) it was procured by fraud, undue influence or overweening bargaining power, (2) enforcement would contravene a strong public policy of the forum in which the suit is brought, or (3) litigating in the designated forum would be so seriously inconvenient that the plaintiff will for all practical purposes be deprived of his or her day in court." *Kahn v. Am. Heritage Life Ins. Co.*, 2006 U.S. Dist. LEXIS 45749, *11-12 (E.D. Pa. June 29, 2006) (*citing The Bremen*, 407 U.S. at 15, 18).

### A.     Enforcement of the Forum Selection Clause With Respect to Plaintiffs' Herbicide Claims Would Contravene Strong Public Policy

Defendant argues that Plaintiffs are bound by the Technology Agreement and that the agreement's forum selection clause requires dismissal of Plaintiff's herbicide based claims or transfer of the cases to Missouri. (Def. Mem. at 1). If Monsanto is correct that the Technology Agreement governs, application and enforcement of the clause to Plaintiffs' claims would contravene public

15

policy since the Technology Agreement would thereby insulate Monsanto from any liability and proscribe any remedy whatsoever for Plaintiffs' herbicide claims. This Court should not enforce a contract that immunizes Monsanto from violating the antitrust laws and denies growers any remedy for their claims.

Courts are unanimous that contract provisions must be interpreted and applied in the context of the contract *in its entirety*. As stated by the Supreme Court in *O'Brien v. Miller*, 168 U.S. 287, 297 (1897), "[t]he elementary canon of interpretation is, not that particular words may be isolatedly considered, but that the whole contract must be brought into view and interpreted with reference to the nature of obligations between the parties, and the intention which they have manifested in forming them." *See also Radio Corp. of America v. Philadelphia Storage Battery Co.*, 6 A.2d 329, 334 (Sup. Ct. Del. 1939) ("Beyond question the court should consider the agreement as a whole, should put itself in the position of the parties, and should examine the circumstances in which the contract was made; and a construction should be sought that will give full force and effect to all of the provisions of the agreement. . ."). Consequently, if the forum selection clause of the Technology Agreement applies to Plaintiffs' herbicide claims, so do the other provisions of the Technology Agreement.

As discussed above, the Technology Agreement limits Monsanto's liability and narrowly proscribes the remedies that are available to growers – *and none of them include remedies for herbicide purchases*. The clause entitled "Grower's *Exclusive* Limited Remedy" provides that Monsanto's entire liability under the agreement is limited to "losses, injury or damages resulting from the use or handling of seed" and that the grower's *exclusive remedy* is the "price paid by the grower" for the seed or "the replacement of the seed." The Technology Agreement also contains a "Binding Arbitration Provision For Cotton Related Claims," which Monsanto contends it has not waived (Def.

16

Mem. at 2, n. 1), which also does not provide a remedy for herbicide claims. In other words, the Technology Agreement would preclude any liability and remedies for Plaintiffs' herbicide claims, and the contract to the extent it applies to their claims is illusory.

Again, if Monsanto is correct that the forum selection clause in the Technology Agreement applies, its enforcement against Plaintiffs would violate public policy. As the Supreme Court noted in *Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985), "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." *See also Gaines v. Carrolton Tobacco Board of Trade*, Inc., 386 F.2d 757, 759 (6th Cir. 1967) (noting that "an agreement, if executed in a fashion calculated to waive damages arising from future violations of the antitrust laws, would be invalid on public policy grounds."); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 267 (3d Cir. 2003) (arbitration provision that substantially limits relief available to plaintiffs not enforced due to its unconscionability).[8]

Moreover, by seeking to extend the reach of the forum selection clause to herbicide transactions, Monsanto is exacerbating its domination over growers in the seed market to deny them their forum of choice in which to litigate their herbicide claims *which were never the subject of an*

---

[8] Any attempt to sever any unenforceable provisions of the Technology Agreement and enforce the remainder of the contract without the unconscionable term would be a meaningless exercise. *See Alexander*, 341 F.3d at 271-72 (refusing to sever unenforceable provisions from an arbitration agreement). Here, there are *no provisions* in the Technology Agreement that are applicable to Plaintiffs' herbicide claims. Monsanto has invoked the forum selection clause solely as an opportunistic ploy to deny the Plaintiffs the forum of their choice in which to litigate their antitrust claims.

*agreement between the parties.*[9]  Monsanto cannot have it both ways: if the Technology Agreement

applies to Plaintiffs' herbicide purchases as Monsanto contends, then the agreement (and its forum

selection clause) is unconscionable and unenforceable since it immunizes Monsanto from violating

federal and state antitrust law and denies Plaintiffs a remedy for their claims.

### B.     The Interests Of Judicial Economy Do Not Favor Transfer

Monsanto asserts that dismissing these cases and permitting Plaintiffs to refile in Missouri

would "promote judicial economy." (Def. Mem. at 10).  To the contrary, a dismissal or transfer

would accomplish the exact opposite result and only waste judicial resources.[10]  This Court currently

---

[9]  Courts in this Circuit have refused to enforce unconscionable contract clauses that are the result of the disparate bargaining power of the parties. *See e.g. Campbell Soup Co. v. Wentz*, 172 F.2d 80, 83 (3$^d$ Cir. 1948) (affirming district court's denial of specific performance of contract between Campbell Soup and its growers where, as here, the individual grower merely filled in his/her name and address in a one-sided form agreement); *Alexander*, 341 F.3d at 267 (arbitration provision that limits relief available to plaintiffs not enforced due to its unconscionability); *Ostroff v. Altera Healthcare Corp.*, 433 F. Supp. 2d 538 (E.D. Pa. 2006) (same). Defendant has submitted *Blades*, No 00-CV-4034-DHR, and *Massey*, No. 299-CV-218-P-B, Def. Mem. at 8, n. 5, in anticipation of Plaintiffs' arguments that the forum selection clauses are not enforceable. *See also McFarling*, 302 F.3d 1291. In those cases, however, the analysis addressed application of the clause to the grower's *seed* claims, and the focus was on whether the grower was aware of the clause or whether his/her signature was obtained by fraud. By contrast, Plaintiffs here do not contend that the clause was not disclosed nor that Monsanto has fraudulently obtained grower's signatures, but that enforcement of the forum selection clause would be unconscionable given the gross disparity between the parties' bargaining power, *especially* given Monsanto's attempt to extend the coercive effect of the clause to antitrust claims concerning herbicides which are not subject to any agreement. Plaintiffs further believe the Technology Agreement, even as applied to seed claims, is unenforceable as a contract of adhesion for the reasons set forth in the dissenting opinion in *McFarling*, 302 F.3d at 1300-303.

[10]   The presence of related litigation is a significant factor in a court's consideration of a motion to transfer under 28 U.S.C. § 1404(a), which involves a similar analysis to a motion to dismiss. Courts have denied transfer pursuant to a valid forum selection clause due to the presence of related litigation. *See e.g. Steward v. Up North Plastics, Inc.*, 177 F. Supp. 2d 953, 959 (D. Minn. 2001) (denying motion to dismiss or for transfer where antitrust case had five year history including three lawsuits before court).

18

is presiding over several related antitrust actions brought by seed companies, seed distributors and growers involving allegations relating to Monsanto's unlawful acquisition and maintenance of monopoly power in various seed markets that include allegations that are substantially identical to the allegations made in Planitiffs' Complaints. *Syngenta Seeds, Inc. v. Monsanto Co.*, Civ. No. 04-908-SLR; *American Seed*, Civ. No. 05-535-SLR. During the litigation of those case, the Court has developed a thorough knowledge and expertise in these matters, which Plaintiffs believe would be invaluable in moving these cases expeditiously, thereby significantly conserving judicial resources and the resources of the parties. Much of the discovery that has already been produced in those actions will be relevant to this action, thereby avoiding duplication of work. Moreover, since this Court recently granted a stay of the antitrust trial in *Syngenta Seeds*, Plaintiffs are hopeful that through the efficient use of discovery already conducted (and depending on the length of the stay), they will be in a position to be ready for trial at the same time that the *Syngenta Seeds* and/or *American Seed* cases are tried. Dismissal or transfer of this case to another jurisdiction would necessarily result in a significant loss of efficiency to the Court and the parties. As this Court recognized in denying Monsanto's transfer motion in *American Seed*, the interests of justice are best served by trying the pending antitrust cases in the same forum – this Court.

19

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Defendant's motion to dismiss

be denied.

ROSENTHAL, MONHAIT & GODDESS, P.A.

Jeffrey S. Goddess (Del. Bar No. 630)
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
jgoddess@rmgglaw.com
jgoddes@rmgglaw.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Noah E. Silverman
Bruce E. Gerstein
Joseph Opper
Garwin Gerstein & Fisher LLP
1501 Broadway, Suite 1416
New York, NY 10036
nsilverman@garwingerstein.com
bgerstein@garwingerstein.com
jopper@garwingerstein.com

Adam M. Moskowitz
Tucker Ronzetti
David M. Buckner
Kozyak Torpin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
AMM@KITTLAW.COM
TR@KITTLAW.COM
DMB@KITTLAW.COM

20