**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PULLEN SEEDS AND SOIL, on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 06-599-SLR |
| MONSANTO COMPANY, | ) ) | |
| Defendant. | ) ) | |
| WADE FARMS, WHITTINGTON & SUMNER FARMS, CLIFFORD F. DANCE, D/B/A CLIFFORD DANCE FARMS, and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 06-600-SLR |
| v. | ) ) | |
| MONSANTO COMPANY, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF MONSANTO'S MOTION TO QUASH**
**PLAINTIFFS' THIRD-PARTY SUBPOENA TO FAEGRE & BENSON, LLP**

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Dated: May 23, 2007

Richard Horwitz (#2246)
David E. Moore (#3938)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Monsanto Company*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 2

RELEVANT FACTS .......................................................................................................... 2

      A.      The *DuPont* Cases ............................................................................ 2

      B.      The *DuPont* Protective Orders ...................................................... 5

      C.      The *Pullen* and *Wade* Cases ........................................................ 7

      D.      Plaintiffs Rule 34 Request for Production to Monsanto .............................. 7

      E.      Plaintiffs' End Run Rule 45 Subpoena to Faegre ......................................... 8

      F.      The Parties Rule 26(f) Conference .............................................................. 9

ARGUMENT ...................................................................................................................... 9

I.     THE MATERIALS SOUGHT IN THE FAEGRE SUBPOENA ARE
      LARGELY IRRELEVANT TO THE INSTANT ACTION ...................................... 9

II.    MONSANTO HAS OFFERED TO PRODUCE RECORDS FROM
      THE *DUPONT* CASES SUBJECT TO AN OVERALL AGREEMENT
      ON THE SCOPE OF DISCOVERY ........................................................................ 12

III.   THE SUBPOENA IS OVERBROAD ...................................................................... 13

IV.  FAEGRE IS SUBJECT TO THE PROTECTIVE ORDER IN THE
      *DUPONT* CASES, AND THEREFORE MONSANTO'S
      CONFIDENTIAL INFORMATION SHOULD NOT BE PRODUCED ................. 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Dart Indus., Inc. v. Liquid Nitrogen Processing Corp.*,
    50 F.R.D. 286 (D. Del. 1970) ........................................................................9

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*,
    2002 U.S. Dist. LEXIS 11389 (D. Pa. Feb. 5, 2002)..................................14

*Jones v. Derosa*,
    238 F.R.D. 157 (D.N.J. 2006)......................................................................10

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
    206 F.R.D. 525 (D. Del. 2002) .......................................................................9

*Mines v. City of Philadelphia*,
    158 F.R.D. 337 (D. Pa. 1994) .........................................................................9

*Philadelphia Nat'l Bank v. Depository Trust Co.*,
    No. 83-3581, 1984 U.S. Dist. LEXIS 18887 (E.D. Pa. March 7, 1984).....................10

*Shingara v. Skiles*,
    420 F.3d 301 (3d Cir. 2005)............................................................................9

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971).......................................................................................13

*Ziner v. Cedar Crest College*,
    2006 U.S. Dist. LEXIS 34858 (D. Pa. May 30, 2006)....................................9

## STATUTES, RULES & REGULATIONS

15 U.S.C. § 15(b) (2000) ......................................................................................13

Fed. R. Civ. P. 26 ...................................................................................................9

Fed. R. Civ. P. 26(c) ...........................................................................................1, 9

Fed. R. Civ. P. 26(f)...........................................................................................9, 12

Fed. R. Civ. P. 34 ..........................................................................................*Passim*

Fed. R. Civ. P. 45 ...................................................................................1, 8, 9, 12

Fed. R. Civ. P. 45(c) ...............................................................................................9

Pursuant to Federal Rule of Civil Procedure 26(c) and 45, Monsanto Company ("Monsanto") hereby moves to quash Plaintiffs Pullen Seeds and Soil, Wade Farms, Whittington & Sumner Farms, and Clifford Dance Farms' subpoena to Faegre & Benson, LLP ("Faegre").

In an effort to circumvent the procedures set forth in Rule 34 regarding party discovery of documents and information, Plaintiffs issued a third-party subpoena to Faegre seeking the production of more than 1.2 million pages of Monsanto's documents that were previously produced in two antitrust actions filed by DuPont in 2000. Faegre represented DuPont – not Monsanto – in those actions. The documents sought include production documents, deposition transcripts, exhibits, declaration, affidavits and expert reports from those prior actions involving alleged conduct dating back to the 1990s.

Plaintiffs have also served a document request upon Monsanto seeking the *very same* documents. Monsanto had been attempting to negotiate the scope of the documents that it is willing to search for and produce from those prior matters. In an effort to end-run the meet and confer requirements of Rule 34 and the Local Rules of the District of Delaware, Plaintiffs have unilaterally proceeded with the third-party subpoena of those documents from DuPont's counsel.

The third-party subpoena should be quashed in its entirely on the following grounds: (i) the documents and information sought are largely irrelevant to the instant action; (ii) Monsanto has offered to produce relevant records from the document production in those cases within the scope of discovery agreed to in this action (e.g., date ranges, custodians and search terms); (iii) plaintiffs' subpoena is overbroad in terms of both the time period and the types of materials sought; and (iv) the documents sought are covered by protective orders in those prior cases, are still maintained by Monsanto (as Monsanto has told Plaintiffs), and should have been returned to Monsanto or destroyed by Faegre long ago, pursuant to the protective orders in the prior cases.

## NATURE AND STAGE OF THE PROCEEDINGS

In September of 2006, Pullen and Wade each filed identical purported class actions against Monsanto. *Pullen* (D.I. 1); *Wade* (D.I. 1). The *Pullen* and *Wade* Plaintiffs claim that Monsanto used its alleged monopoly in biotech traits as leverage to monopolize the herbicide market, in which Monsanto sells its glyphosate-based herbicide "Roundup." *Pullen* (D.I. 1, Compl. ¶¶77-92); *Wade* (D.I. 1, Compl. ¶¶79-94). Plaintiffs claim that, as a result, growers paid supra-competitive prices for Roundup. *Id.* Monsanto has moved to dismiss both the *Pullen* and *Wade* actions because those claims are governed by a forum selection clause in their Technology Agreements with Monsanto that requires the suits to be brought in St. Louis, Missouri. *Pullen* (D.I. 7); *Wade* (D.I. 5).

The Court held the Rule 16 Scheduling Conference on March 26, 2007, where it set a document production deadline for August 31, 2007. Minute Order, Mar. 26, 2007. On May 17, 2007, the Court issued a scheduling order in this action requiring, among other things, the production of party documents on or before October 18, 2007. *Pullen* (D.I. 24); *Wade* (D.I. 22). The parties exchanged discovery requests by April 10, 2007. However, on April 9, 2007, Plaintiffs served a third-party subpoena on Faegre & Benson, LLP, which is the subject of the instant motion. Rosenthal Decl., ¶3 - Third Party Subpoena to Faegre & Benson, LLP.

## RELEVANT FACTS

### A.    The *DuPont* Cases

In 2000, E.I. Du Pont De Nemours & Company ("DuPont") filed two lawsuits against Monsanto in March 2000. Rosenthal Decl., ¶¶4-5 - *DuPont Delaware* Compl. and *DuPont South Carolina* Compl. Faegre & Benson, LLP, based in Minneapolis, Minnesota, represented DuPont in the two lawsuits against Monsanto. *Id.*

The complaints in those actions are distinct from those filed in the instant action. While they contain antitrust allegations, the two *DuPont* actions largely revolved around a complex business relationship among DuPont, Monsanto and Asgrow, an entity that

2

become a wholly owned subsidiary of Monsanto. *See, e.g.*, Rosenthal Decl., ¶4 - *DuPont Delaware* Compl ¶¶17-47.

The *DuPont Delaware* action largely revolved around DuPont's existing relationship with Asgrow. *Id.* DuPont, then primarily a chemical company, had developed a class of herbicides know as sulfonylureas ("SU") that competed with Monsanto's glyphosate products sold under the Roundup brand. *Id.* at ¶¶12-13. DuPont had also developed a SU tolerant soybean trait sold or "STS." *Id.* at ¶17. In 1988, Asgrow and DuPont entered into a Plant Breeding and Development Agreement regarding the commercialization of STS using Asgrow's soybean germplasm. *Id.* at ¶20. The relationship was further developed by a 1994 STS Soybean Commercialization Agreement, the 1995 First Addendum to the Agreement, and the 1998 Second Addendum to the Agreement. In 1996, Monsanto announced its intention to acquire Asgrow, which was completed in February of 1997. *Id.* at ¶¶21, 25, 32-34, 41.

The *DuPont Delaware* Complaint alleges that Asgrow and Monsanto worked to together to steal DuPont's trade secrets relating to its soybean technology and that Monsanto further sought to undermine the Asgrow/DuPont relationship, ultimately resulting in the breach of the above mentioned contracts. *Id.* at ¶¶36-38, 43-47. Over half of DuPont's eleven causes of action in the Delaware case relate to the common law claims. *Id.* at ¶¶67-109.

The *DuPont Delaware* case also alleges that Monsanto attempted to monopolize and/or monopolized markets for "cotton seed" and "herbicides." *Id.* at ¶¶49, 54-56, 63, 91-98. However, the markets at issue were not limited to transgenic cotton seed or glyphosate, as in the instant complaint. *Id.* at ¶64. Rather the conduct at issue largely dealt with DuPont's inability to market and sell its SU herbicides and STS soybeans.

The *DuPont South Carolina* case was also filed in 2000. Rosenthal Decl., ¶5 - *DuPont South Carolina* Compl. This case also involved DuPont and Monsanto's then tenuous relationship. Separate and apart from the issues outlined above, DuPont sold a

cotton herbicide under the trademark "Staple" that could also be co-packed with glyphosate and sold under the trademark "Staple Plus." *Id.* at ¶¶15-16. DuPont's Staple, Staple Plus and SU competed with Monsanto's Roundup. *Id.* at ¶¶11, 15-17. To further complicate their relationship, DuPont and Monsanto entered into a Glyphosate Supply Contract in 1999, under which Monsanto supplied finished glyphosate that DuPont would then sell to wholesalers, retailers and growers under its own brand. *Id.* at ¶36.

The *DuPont South Carolina* case contained Section 1 and Section 2 claims, including claims for monopolization and attempted monopolization in the markets for "cotton seed" and "herbicides." *Id.* at ¶¶44-56. *See also* Rosenthal Decl., ¶4 - *DuPont Delaware* Compl ¶¶91-106. In contrast, the instant complaint is limited to the markets of genetically modified seed and glyphosate. *Pullen* (D.I. 1, Compl. ¶¶35, 43, 47); *Wade* (D.I. 1, Compl. ¶¶37, 45, 49). Importantly, many of the agreements and programs complained of in the *DuPont South Carolina* case involve agreement or programs that have long since been eliminated or modified. For example, Monsanto has not charged a technology fee to growers using Monsanto's traits since 2002. Similarly, requirements that growers use Monsanto's Roundup Glyphosate on its Roundup Ready glyphosate resistant products were also eliminated in 2000.

Temporally, the *DuPont* cases and the instant action were quite distinct. Those cases were filed in March 2000 – a full six months prior to the expirations of Monsanto's patent on Roundup in September 2000. *cf.* Rosenthal Decl., ¶¶4-5 - *DuPont Delaware* Compl. and *DuPont South Carolina* Compl. with *Pullen* (D.I. 1, Compl.); *Wade* (D.I. 1, Compl.) Almost all of the conduct complained of in the *DuPont* cases occurred in the early and mid 1990s. Rosenthal Decl., ¶¶4-5 - *DuPont Delaware* Compl. and *DuPont South Carolina* Compl. DuPont entered into the contract at issue with Asgrow on June 24, 1988 – over a decade before Monsanto's Roundup patent expired Rosenthal Decl., ¶4 - *DuPont Delaware* Compl. ¶20. Thus, discovery in the *Delaware* case reached even farther into the parties' history, including contracts signed in the 1980s and acquisitions

4

occurring in the mid 1990s. *Id.* at ¶¶21, 25, 32-34, 41. Similarly, discovery in the *South Carolina* case focused almost entirely on Monsanto's conduct in the 1990s, and not in the post-patent period. *See, generally,* Rosenthal Decl., ¶5 - *DuPont South Carolina* Compl.

Discovery in the *DuPont* cases was massive. Monsanto produced 1.2 million pages of documents in discovery in those litigations. Rosenthal Decl., ¶9. Monsanto produced thousands of confidential documents relating to its cotton and soybean seed business, as well as thousands of documents relating to Monsanto's chemical business. *Id.* Just Monsanto's document collection alone took over a year and a half to complete. DuPont also took an inordinate number of depositions in the course of discovery. Indeed, over seventy Monsanto employees were deposed by DuPont in the two cases. *Id.*

## B.    The *DuPont* Protective Orders

Discovery in both the *Delaware* and *South Carolina* cases was governed by Protective Orders. Rosenthal Decl., ¶¶6-7 - *DuPont Delaware and DuPont South Carolina* Protective Orders. The Protective Orders both provide:

> "Confidential Information disclosed pursuant to this Protective Order shall be used only for purposes of this litigation and shall be protected from any unauthorized or unrelated use."

*Id.*

In April 2002, DuPont and Monsanto settled the two cases and submitted stipulations of dismissal with the courts. However, the settlement did not relieve the parties of their obligations under the Protective Orders. Rosenthal Decl., ¶8. Indeed, the Protective Orders in the *DuPont* cases directed the attorneys of record to destroy or return all confidential materials upon termination of the cases:

> Within one hundred twenty (120) days of the final disposition of the above entitled case, whether by judgment and exhaustion of all appeals, or by settlement, the attorneys of record:
>
> (1)    Shall destroy or return to the disclosing Party or Third Party, or its attorney of record, the Confidential Information in their

> possession, custody or control or in the possession, custody or control of their staff.
>
> (2)    Shall insure that all Confidential Information in the possession, custody or control of their experts and consultants is destroyed or returned to the disclosing Party or Third Party, or its attorney of record.
>
> (3)    Shall destroy all notes, memoranda or other documents which contain excerpts from any of the Confidential Information; and
>
> (4)    Shall deliver to the disclosing Party or Third Party, or its attorney of record, written confirmation that there has been compliance with the terms of this paragraph or that there has not been compliance and the reason for such noncompliance, upon receipt of which the disclosing Party or Third Party may make application to the Court for such further order as may be appropriate.
>
> Notwithstanding the foregoing, either Party may retain copies of any material filed with the Court.

*Id.*

Faegre has advised Monsanto's counsel that the documents were not initially destroyed by Faegre because of a request it received by the Department of Justice regarding an investigation into the herbicide industry. Rosenthal Decl., ¶10. That investigation, however, was closed in August 2004, without the Department of Justice taking any further action. Rosenthal Decl., ¶11 - Article Regarding Closing of DOJ Inquiry. While Faegre maintains it never received notice from the Department that that the documents were no longer under retention, the simple fact is that the documents should have been returned to Monsanto or destroyed by Faegre almost three years after the conclusion of the Department's investigation. Moreover, Monsanto still has copies of the very same documents; Plaintiffs know this, yet they are trying to get the documents from Faegre (instead of Monsanto) to improperly attempt to prevent Monsanto from presenting to this Court reasons why certain materials from that unrelated litigation are irrelevant and should not be produced here.

C.    **The *Pullen* and *Wade* Cases**

Monsanto's patent on its glyphosate-based herbicide, Roundup, expired in September 2000.  Plaintiffs allege that ***after*** the expiration of the Roundup patent in September of 2000, Monsanto has charged monopoly prices significantly higher than the Roundup's generic alternatives.  *Pullen* (D.I. 1, Compl. ¶3); *Wade* (D.I. 1, Compl. ¶3). Indeed, Plaintiffs  purported class definition is limited to those growers who purchased Monsanto's Roundup between September 26, 2002 and today.  *Id.* at ¶¶20, 27; *Id.* at ¶¶22, 29.  Plaintiffs seek an injunction and damages against Monsanto, claiming that Monsanto "charg[ed] dealers 300-400% more for brand-name Roundup than the price charged by generic competitors."  *Id.* at ¶3.

Plaintiffs also claim that since the Roundup patent expiration, Monsanto has used incentive programs to unlawfully bundle Roundup with Monsanto's seed offerings.  *Id.* According to Plaintiffs' complaint,  Monsanto's 2004 lawsuit against Syngenta for the misappropriation of GA21 was also part of Monsanto's alleged anticompetitive scheme to foreclose competition.  *Id.* at ¶¶73-75; *Id.* at ¶¶75-77.  Thus, all of the allegedly actionable conduct complained of in the *Pullen* and *Wade* cases occurred after the expiration of Monsanto's Roundup patent.

D.    **Plaintiffs Rule 34 Request for Production to Monsanto**

On April 9, 2007, Plaintiff served a Rule 34 request for the production of documents from Monsanto seeking virtually every scrap of paper generated in the *DuPont* actions:

> **REQUEST NO. 1:**  All non-privileged documents received, produced, or filed with a court, in connection with any case or legal action which contains allegations that Monsanto engaged in, and/or attempted to engage in, unfair, wrongful, or anticompetitive business or trade practices, exclusive dealing, exclusionary dealing, bundling, tying, monopolization, violations of the antitrust laws, unfair trade practices, and/or violations of state statutes or common law governing fair competition and/or business practices regarding RoundUp, Glyphosate or Herbicides, including but not limited to:

(a) *E. I. DuPont De Nemours and Company v. Monsanto Company*, No. 4:00-CV-00952-CWH, (D.S.C.)(Florence Division);

(b) *E.I. DuPont de Nemours and Co. v. Monsanto Co. and Asgrow Seed Co.*, No. 00-359-SLR (D. Del);

(c) *Agrevo Environmental Science USA LP v. Scotts Company, et al*, (S.D.N.Y.) 1:99-CV04015-LAP-THK; and

(d) *Aventis v. Scotts Company and Monsanto*, (S.D.N.Y.) 1:02-CV-03722-LAP-THK This request includes, but is not limited to:

This request includes, but is not limited to:

(a) all documents produced or received by Monsanto in discovery in any of the cases or actions described in this request;

(b) all court filings, court orders or opinions, pleadings, discovery requests and responses, correspondence, deposition testimony, deposition exhibits, expert reports or affidavits, exhibits attached to or cited in any expert reports of affidavits, and/or deposition videos in any of the cases or actions described in this request.

Rosenthal Decl., ¶12 - Plaintiffs' First Request for Production of Documents.

### E.    Plaintiffs' End Run Rule 45 Subpoena to Faegre

On April 9, 2007, plaintiffs issued a subpoena to Faegre requesting the very same documents from the *DuPont* actions, including:

1.    All documents/or other things in your custody or control which were produced by Monsanto (including, but not limited to its subsidiaries, divisions or agents) . . .

2.    Any unmarked copies in your custody or control of any depositions or court reporter transcripts crated or received . . . this request includes, but is not limited to: (a) paper, (b) electronic, or video copies of any such transcripts; and (b) any exhibits or documents cited or used therein.

3.    Copies in your custody or control of any court filings, court orders, or opinions, served pleadings, and/or served discovery requests. . .

Rosenthal Decl., ¶3.

### F.    The Parties Rule 26(f) Conference

Monsanto requested that plaintiffs withdraw the Faegre subpoena given that it was in possession of the documents in question and that plaintiffs had served the identical request upon Monsanto.  Plaintiffs refused to do so, but agreed to hold the enforcement of the subpoena in abeyance pending our Rule 26(f) conference.

On April 20, 2007, the parties conducted an extensive meet and confer regarding the scope of the Rule 34 request for production of documents.  There have been several follow-up communications, with additional communications planned for the next week or so.  In the meet and confers, Monsanto offered to review and produce documents responsive to plaintiffs requests subject to an agreement on the scope of discovery in terms of: (i) date ranges; (ii) custodians; and (iii) search terms.  Plaintiffs rejected that offer, instead insisting on a wholesale production of all documents from the *DuPont* cases.  Rather than continuing the discussions, plaintiffs sent Monsanto a letter indicating that had instructed Faegre to comply with the subpoena.  Rosenthal Decl., ¶13.

### ARGUMENT

### I.    THE MATERIALS SOUGHT IN THE FAEGRE SUBPOENA ARE LARGELY IRRELEVANT TO THE INSTANT ACTION

Parties may move to quash a subpoena served upon non-party pursuant to Rule 26(c) and 45(c) for "good cause shown."  *Shingara v. Skiles*, 420 F.3d 301, 305-306 (3d Cir. 2005); *Ziner v. Cedar Crest College*, 2006 U.S. Dist. LEXIS 34858 (D. Pa. May 30, 2006); *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *Mines v. City of Phila.*, 158 F.R.D. 337 (D. Pa. 1994).[1]  "Good cause" includes whether the evidence sought from the

---

[1] *See also Dart Indus., Inc. v. Liquid Nitrogen Processing Corp.*, 50 F.R.D. 286 (D. Del. 1970) (refusing to hold that a party did not have standing under Rule 45 to challenge a subpoena served on a non-party); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (holding that a nonparty may seek protection under either Rule 26 or 45).

third-party is relevant to the case before the court. *See, e.g., Philadelphia Nat'l Bank v. Depository Trust Co.*, No. 83-3581, 1984 U.S. Dist. LEXIS 18887, at *11-12 (E.D. Pa. March 7, 1984) (citing *Payne v. Howard*, 75 F.R.D. 465 (D.D.C. 1977)); *Jones*, 238 F.R.D.at 163. Here, the materials sought are not relevant to instant allegations. Plaintiffs' claims in this case are distinct from those in the *DuPont* cases. The *DuPont* actions largely revolve around complex business disputes among direct competitors -- not indirect purchasers as alleged in the instant action.

As noted above, the *DuPont Delaware* case largely involved DuPont's belief that Monsanto and Asgrow worked together to undermine Asgrow's relationship with DuPont in the development of its STS herbicide resistant soybeans. The focus of the *DuPont Delaware* Complaint is the claims for breach of contract, theft of trade secrets, breach of fiduciary duty and tortious interference arising out the failed relationship with Asgrow. Rosenthal Decl., ¶4 - Compl. ¶¶67-90. Indeed, over half of DuPont's eleven causes of action were not antitrust claims and were wholly unrelated to Monsanto's herbicides. *Id.* at ¶¶67-109. The *DuPont South Carolina* case also revolved around the complex relationship of DuPont as competitor in the herbicide industry and Monsanto's relationship with DuPont under a Glyphosate Supply Contract. Rosenthal Decl., ¶5 - Compl. ¶36. Much of the discovery in those cases, sought here, involved that complex competitor relationship and is simply not germane to the instant action.

Certainly, both *DuPont* cases contain allegations of monopolization and attempted monopolization claims. However, those claims are distinct from those in the instant action. The alleged markets at issue differ dramatically. In the *DuPont* cases, DuPont alleged markets for all "herbicides," "cotton seed," and soybean seed." Rosenthal Decl., ¶4 - Compl. ¶64; Rosenthal Decl., ¶5 - Compl. ¶41. Here, the plaintiffs have alleged far narrower markets of "non-selective herbicides," "glyphosate herbicides," "glyphosate resistant corn seed," "glyphosate resistant soybean seed," "glyphosate resistant cotton seed," "glyphosate resistant alfalfa seed," and "glyphosate resistant canola seed." *Pullen*

10

(D.I. 1, Compl. ¶¶35, 43); *Wade* (D.I. 1, Compl. ¶¶37, 45). The instant complaint also alleges a market for "pesticide resistant seed traits," that were not the subject of the *DuPont* cases. *Pullen* (D.I. 1, Compl. ¶47); *Wade* (D.I. 1, Compl. ¶49).

Temporally, alleged anticompetitive conduct alleged in the *DuPont* cases occurred ***prior*** to the expiration of the Roundup patent in September 2000. Given the nature of DuPont's allegations, the scope of discovery in the *DuPont* cases was limited to January 1996 until mid-2001.[2] Thus, almost all of the documents 1.2 million documents produced by Monsanto relate to Monsanto's conduct ***before*** its Roundup patent expired.

However, plaintiffs' claims relate to Monsanto's conduct ***after*** the Roundup patent expired in September 2000. *See, e.g.*, *Pullen* (D.I. 1, Compl. ¶3); *Wade* (D.I. 1, Compl. ¶3). For instance, Plaintiffs claim that after the expiration of the Roundup patent, Monsanto "charg[ed] dealers 300-400% more for brand-name Roundup than the price charged by generic competitors." *Id.* Plaintiffs also reference Monsanto's lawsuit against Syngenta, which it filed in 2004 for the misappropriation of Monsanto's GA21. *Id.* at ¶¶73-75; *Id.* at ¶¶75-77. Indeed, Plaintiffs' purported class definition is limited to those growers who purchased Monsanto's Roundup between September 26, 2002 and today. *Id.* at ¶¶20, 27; *Id.* at ¶¶22, 29.

Plaintiffs' entire case is that they allegedly paid supracompetitive prices for Monsanto's Roundup. However, Monsanto's patent on Roundup did not expire until September 2000. Thus, there was little, if any, price competition for Roundup until after the patent expired. Even so, Plaintiffs are only claiming damages on purchases of Roundup since September 2002.

---

[2] In response to DuPont's numerous discover requests, Monsanto collected documents from over three hundred custodians. The collection process began in April 2000 and was not completed until mid-year 2001. Rosenthal Decl., ¶9.

## II.    MONSANTO HAS OFFERED TO PRODUCE RECORDS FROM THE *DUPONT* CASES SUBJECT TO AN OVERALL AGREEMENT ON THE SCOPE OF DISCOVERY

Monsanto is not refusing to allow any discovery on the documents produced in the *DuPont* cases. To the contrary, Plaintiffs served a Rule 34 request for documents upon Monsanto seeking the very same Monsanto documents held by Faegre. As part of the Rule 26(f) conference process, Monsanto offered to search and produce from Monsanto's document production in the *DuPont* cases documents subject to an overall agreement on the scope of discovery, including: (i) date ranges; (ii) custodians; and (iii) search terms. In that regard, the parties have made substantial headway on at least the issue of custodians and search terms, with the hope of reaching an agreement before the anticipated June 13, 2007 discovery status conference.

Rather than continuing the discussions relating to the DuPont documents as part of the Rule 26(f) process, plaintiffs instead rejected Monsanto's offer and chose to require Faegre to comply with the subpoena, knowing that Monsanto would be required to file the instant motion. *See* Rosenthal Decl., ¶13 - Letter from Plaintiffs to Howrey ("[W]e believe that it would be better for both sides if the Court can quickly resolve the subpoena dispute…").

By seeking production of the *DuPont* materials from Faegre, Plaintiffs are attempting to circumvent their obligation to negotiate the scope of discovery in this case with Monsanto, instead forcing the Court to prematurely intercede in the process. Certainly, neither the spirit, nor letter of the Federal Rules or Local Rules of this Court contemplate that parties will use a Rule 45 third-party subpoena to make an end-run on the meet and confer requirements. Indeed, the very purpose of the requirement that encourages parties to resolve disputes among themselves will be negated if such a practice is permitted.

12

### III.    THE SUBPOENA IS OVERBROAD

The statute of limitation under the Sherman Act is four years. 15 U.S.C. § 15(b) (2000). The limitations period begins to run when the cause of action accrues. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 228 (1971). In this case, the statute of limitation extends back to September of 2002. While it is within the District Court's discretion to permit discovery a reasonable beyond the period of the statute of limitations, there is no reason to permit discovery of conduct that occurred largely in the 1990s.

Separate and part from the subpoena's undefined temporal scope, the subpoena is entirely overbroad by not only seeking Monsanto's production documents from the *DuPont* cases, but also pleadings, declarations, affidavits, depositions and expert reports. Much of the testimony and expert reports bear no relation to the issues in this case. In short, plaintiffs are on a fishing expedition.

Moreover, giving Plaintiffs unfettered access to the depositions taken in the *DuPont* cases will unfairly prejudice Monsanto. Plaintiffs have asked for 200 hours of depositions in this case. However, if Plaintiffs are also given access to the more than seventy depositions taken in the DuPont cases, they will have essentially received an *additional 450 hours* of deposition discovery in this case.

Unfortunately, the *DuPont* materials are just the tip of the iceberg. Plaintiffs have requested that Monsanto produce all documents, court filings, court orders or opinions, pleadings, discovery requests and responses, correspondence, deposition testimony, deposition exhibits, expert reports or affidavits, exhibits attached to or cited in any expert reports of affidavits, and/or deposition videos in two cases relating to the regarding a 1999 antirust action brought by AgrEvo (subsequently Aventis) against Scotts Company, Scott's Miracle-Grow Products, Inc., and Monsanto regarding herbicides in used in the residential context (e.g., lawn care). Rosenthal Decl., ¶12. *See also, Agrevo Envtl. Sci. USA LP v. Scotts Co., et al*, (S.D.N.Y.) 1:99-CV04015-LAP-THK and *Aventis v. Scotts*

*Co. and Monsanto*, (S.D.N.Y.) 1:02-CV-03722-LAP-THK.  Similarly, Plaintiffs have also demanded all of the depositions and exhibits from the *Syngenta* case, as well as all of the pleadings, briefs, and attachments filed with the Court, including Monsanto's exhibit and witness lists for trial.  *Id.*  Here, Plaintiffs' strategy is clear: litigate issues in these prior actions as opposed to the issues raised in their complaints.

IV.    **FAEGRE IS SUBJECT TO THE PROTECTIVE ORDER IN THE *DUPONT* CASES, AND THEREFORE MONSANTO'S CONFIDENTIAL INFORMATION SHOULD NOT BE PRODUCED**

Courts have ruled that protective orders promote fairness and efficiency among litigants *specifically because* the parties understand that their information will only be disclosed to those individuals identified in the protective order.  *See Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers*, L.L.C., 2002 U.S. Dist. LEXIS 11389, at *7 (D. Pa. Feb. 5, 2002).  Thus, as a matter of public policy, courts encourage parties to enter into protective orders to govern the disclosure of confidential information.  Protective orders allow parties to engage in the exchange of closely-held confidential information in the course of discovery without concern of unauthorized disclosure to the parties' competitors.

The materials in Faegre's possession are subject to the Protective Orders entered in those cases.  Those Orders contemplated that the materials would be only used for the purpose of those litigations and either returned or destroyed at the conclusion of the litigation.  Allowing Plaintiffs access to the materials sought in the Faegre subpoena violates the very protections Monsanto sought when it entered into the Protective Orders with DuPont.  The appropriate avenue to seek these materials is through the Rule 34 process, not to abrogate prior protective orders.

14

## CONCLUSION

WHEREFORE, Monsanto respectfully requests that the Court quash Plaintiffs' subpoena to Faegre & Benson, LLP.

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Dated: May 23, 2007
797420/30803

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
        Richard Horwitz (#2246)
        David E. Moore (#3938)
        Hercules Plaza, 6th Floor
        P.O. Box 951
        Wilmington, DE 19801
        (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendant*
*Monsanto Company*

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 23, 2007, the attached document was hand

delivered to the following persons and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification to the registered attorney(s) of record that the document

has been filed and is available for viewing and downloading:

Jeffrey S. Goddess
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899

I hereby certify that on May 23, 2007, I have sent by Electronically Mailed the foregoing

document to the following:

Noah H. Silverman
Bruce E. Gerstein
Joseph Opper
Garwin Gerstein & Fisher LLP
1501 Broadway, Suite 1416
New York, NY 10036
nsilverman@garwingerstein.com
bgerstein@garwingerstein.com
jopper@garwingerstein.com

Adam M. Moskowitz
Tucker Ronzetti
David M. Buckner
Kozyak Torpin & Throckmorton, P.A.
2525 Ponce de Leon, 9th floor
Miami, FL 33134
amm@kttlaw.com
tr@kttlaw.com
dmb@kttlaw.com

/s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

763267 / 30803